SAMUEL PARR v. THE BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY.

No. 13,639.  (78 Pac. 449.)

SYLLABUS BY THE COURT.

1. HIGHWAYS — *Defective Bridge — Statutory Liability of County — Must be Actual Personal Notice of Particular Defect.* Under the statute imposing a liability upon the county for damage sustained by reason of a defective bridge constructed by the county, where the chairman of the board of county commissioners has five days' notice of the defect, the notice essential to a recovery is actual personal notice of the defect causing the injury, and signifies something more than an opportunity to acquire notice by the exercise of due care and diligence.

2. —— *Notice Will Not be Inferred.* There must be actual notice of the particular defect causing the injury, and something more than an inference of notice from the long continuance of a defect.

3. —— *General Knowledge Insufficient.* A general knowledge of the plan and original construction of a bridge faulty in some respects, which has stood and been used for about nine years, cannot be regarded as notice of a particular defect, viz., a decayed sill, which broke, and which may have been affected to some extent by the imperfect construction.

4. —— *Required Notice Not Proved.* Upon an examination of the evidence, it is *held,* that the requisite notice of the defect causing the injury was not shown.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed November 5, 1904. Affirmed.

*D. H. Branaman*, and *David Overmyer*, for plaintiff in error.

*Otis E. Hungate*, and *Welch & Welch*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : In June, 1901, while Samuel Parr was passing over the Shunganunga bridge, it fell, precipitating him into the creek below and severely injuring him. The bridge was built by the county commissioners of Shawnee county in 1892, nine years before the fall, and was repaired by the county in December, 1899. It was a combination bridge of wood and iron, sixty-five feet long, and had a roadway sixteen feet wide. At one end of the bridge was a stone abutment, on which there was an oak sill or cap, eighteen feet long and about ten inches square, and at the other end was piling, upon which there was another oak cap of the same length and size. The dimensions of the abutments were not clearly shown, but the length was given as from sixteen and a half to seventeen and a half feet. There was evidence that each end of the wooden sills extended over the ends of the abutments about four inches. The sill on the stone abutment broke, and the bridge fell. The broken sill was described by witnesses as "brash," "partially rotted," affected with "a dry rot," and that it was the "same color clear through."

Parr presented a claim for damages to the board of county commissioners, which was disallowed. An appeal was taken to the district court, where a trial was had with a jury, and at the close of plaintiff's

evidence a demurrer to the evidence was sustained, and under the direction of the court a verdict was returned in favor of the county.

The statute makes a county liable for damages sustained by reason of a defective bridge constructed by the county, where the chairman of the board of county commissioners had notice of such defects at least five days prior to the time the damage was sustained. (Gen. Stat. 1901, § 579.)

The bridge that fell was built by the county. It was defective, and by reason of the defect it fell. Was there such notice of the defect as to make the county liable? This question has been practically determined by former rulings of this court. No proof was offered to show that the chairman of the board had personal knowledge that the sill was rotten, nor that any one had told him that there was danger that the bridge would fall because of any particular defect. Much is said in the argument about implied notice, and notice derived from facts and circumstances which pointed to the ultimate fact. Whatever may be the rule as to notice of transfers and conveyances of property and the like, that required in statutes like the one before us is necessarily of a high degree. The liability insisted on is statutory. In the absence of a statute no recovery could be had against the county for injuries resulting from a defective bridge, however negligent the officers might be. Under this statute, imposing a new liability on the county, the notice essential to a recovery is actual personal notice, afforded by direct knowledge of a particular fact, or by direct communication from those acquainted with it, as distinguished from constructive or implied notice, arising from a knowledge of facts and circumstances sufficient to put one on inquiry and lead to knowledge of the fact in

question.   So it was said in *Murray v. Woodson County*, 58 Kan. 1, 48 Pac. 554:

"In actions under the statute (ch. 237, Laws 1887; Gen. Stat. 1889, § 7134) to recover for injuries occasioned by a defective bridge, notice of the defect must be brought home to the chairman of the county board; and a presumption, that information of the defect possessed by another member of such board was communicated by him to the chairman, will not be indulged.   .   .   .   The statute charges the county with liability only where the chairman of the board has notice of the defect in question.   This statute excludes the idea of imputable or constructive notice."

It was in effect held, in *McFarland v. Emporia Township*, 59 Kan. 568, 53 Pac. 864, that the statute required actual notice, not only of the physical conditions, but of the fact that such conditions resulted in making the highway unsafe.   In *Jones v. Walnut Township*, 59 Kan. 774, 52 Pac. 865, a township trustee had been notified that a bridge had been defective, and he caused it to be repaired.   Seven months afterward an injury occurred because of a rotten stringer in the bridge, which was not noticed by him when the repairs were made.   In answer to the question whether a liability could arise under the circumstances it was remarked:

"We think not.   The trustee discharged his duty when he directed the repair of the bridge, after notice had been given him of its defective condition.   The particular defect causing the accident, if in existence at that time, was not specially called to his attention, and was not observed by the road overseer in making the repairs, and such evidences of the condition of the stringer as were observed by the road overseer negatived the idea of its being defective."

The sufficiency of a notice under this statute was considered in *Hari v. Ohio Township*, 62 Kan. 315, 62

Pac. 1010, and the question was whether notice may be presumed from the open character and the continued existence of a defect.   The court said:

"In our judgment, such last-mentioned kind of notice is insufficient.   The statute requires 'at least five days' notice,' and that, we think, means actual notice. It is *notice* the statute requires, and not the inference of notice.   Notice of a fact is knowledge of that fact."

In the case of *Cunningham v. Clay Township*, 69 Kan. 373, 76 Pac. 907, a recovery was sought for an injury caused by a defect in the highway, viz., the leaving of a stone on the side of the road, and it was said:

"In order for the plaintiff to recover, he must show that the trustee had notice not only of the existence and location of the stone but also of the fact that it was a menace to the safety of travel.   It is not essential to the township's liability that the trustee should have actually known, or even believed, that the stone as situated was likely to occasion runaways, but it is necessary that he should have had his attention directed to it in that connection—that he should have had knowledge that the safety of the highway in that way was questioned, or was subject to question." (Page 379.)

Under the statute the county is not made liable because of neglect to keep a bridge in safe condition for travel, but is held only for injuries resulting from defects of which the chairman of the board had five days' notice.   It having been held that notice to other members of the board does not meet the statutory requirements, it follows that the notice to the chairman must be personal.   The authorities cited are conclusive that imputable notice is not sufficient, nor can knowledge be implied because of long continuance of the defect.

It is strongly contended that because the plan and original construction of the bridge, built under the supervision of the county commissioners, was defect-

ive, in that the abutment was not as long as the oak sill which was broken, and because of the repairing of the bridge by the county in 1899, when an unsound sill was taken out of the other end of the bridge and a new one substituted, and also when a brace was placed on one side of the bridge and the other side tied to a tree with a wire, there was actual notice of the defect which caused the injury. It is true that the sill which broke was not supported from end to end by the stone abutment, and also that the superstructure, which was about as wide as the sill was long, extended somewhat over each end of the abutment; and it may also be taken as true that good engineering required an abutment as long as the superstructure was wide; but probably no bridge constructed is perfect, either in plan or construction. Although the shoes of the iron arches did extend a little beyond the ends of the abutment, they were partly over, and were supported by, it. The bridge, faulty as it may have been, stood for nine years, and probably would have stood much longer if the sill had not become rotten. The faulty construction, if it may be so termed, of a bridge continuously used for nine years, as this one was, is not actual notice of the defect which caused the injury.

It might be remarked, as was done in *Jones v. Walnut Township, supra,* that "the particular defect causing the accident, if in existence at that time, was not specially called to the attention" of the chairman. In accordance with the rule stated in *McFarland v. Emporia Township, supra,* and *Cunningham v. Clay Township, supra,* there must be actual notice not only of the physical condition of the bridge but also of the fact that such conditions resulted in making it unsafe.

In Maine there is a statute which makes twenty-four hours' actual notice a condition precedent to a

recovery for an injury received on a defective high-way.   In interpreting that act, in *Smyth v. Bangor*, 72 Me. 249, 252, the court remarked :

"Since the passage of the act of 1877, chapter 206, no recovery can be had against a town or city for an injury received through a defect in one of its highways, unless some one of its municipal officers, or highway surveyors, or road commissioners, had twenty-four hours' actual notice of the defect.   And the notice must be of the defect itself, of the identical defect which caused the injury.   Notice of another defect, or of the existence of a cause likely to produce the defect, is not sufficient."

In the case of *Rogers v. Shirley*, 74 Me. 144, 147, the same court said :

"The call now is for twenty-four hours' actual notice to the municipal officers, highway surveyors, or road commissioners of the town, of the defect or want of repair which is the cause of the accident, provable, as in other cases where actual notice is required, by circumstances showing personal knowledge on the part of the party to be notified, or information conveyed to him by others, of the existing facts.   Nor can one be said to have actual notice of such a thing as this statute has reference to until both the character, and approximately the location upon the face of the earth, of that which constitutes the defect, is in some way made known to him."

It was held in *Harley v. Bowdoinham*, 88 Me. 293, 34 Atl. 72, that actual notice provided for in the statute was something more than an opportunity to acquire notice by the exercise of due care and diligence, and that notice that all the culverts were in bad condition was not actual notice of a particular defect in one of them.   In *Gurney v. Rockport*, 93 Me. 360, 45 Atl. 310, it was held, under the statute mentioned, that "knowledge of a cause likely to produce a defect is not actual notice of a defect resulting from that

cause." See, also, *Carleton v. Caribou*, 88 Me. 461, 34 Atl. 269.

While it can be said that the chairman of the board knew of the plan and general character of the bridge, there was no testimony that the identical defect which caused the injury was known to him, or that it had been brought to his attention within the statutory time; indeed, plaintiff's testimony showed that when the bridge was repaired, in December, 1899, an examination of the entire structure was made by the county commissioners, in company with a mechanic, with a view of finding defects, and such as were found were then repaired. The mechanic who made the repairs for the county was directed to repair not only the defects then discovered by him but any other he might detect while at work, and this he did, leaving the bridge, as he said, in a safe condition. The argument that the chairman of the board then had an opportunity to learn, and should have known, that the sill was defective, is not good. As already shown, actual notice is more than an opportunity to learn or know of defects. Even if it were shown that the chairman failed to exercise due care in the inspection of the bridge, that would not have been proof of actual notice within the meaning of the statute. We conclude that proof of actual notice was not produced, and, therefore, the court rightly sustained the demurrer to the evidence.

There is nothing material in the claims of error in overruling the motion for a new trial.

The judgment of the district court will be affirmed.

All the Justices concurring.